Lianlian Porth

Email :Lhkc_25@outlook.com
Phone: 408-381-9986
Address: P.O BOX 267,San Lorenzo, CA 94580
Atty.: Pro Se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Lianlian Porth<br><br>          Plaintiff,<br><br>    vs.<br><br>**PAYWARD, INC.** and **PAYWARD VENTURES, INC.,**<br><br>          Defendants. | Case No.3:25-cv-01885-VC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br><br>Date: July 17, 2025<br>Time: 10:00 a.m.<br>Crtrm.: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

**I. Introduction: Defendants' Motion Is Structurally Disjointed and Intentionally Obscures Procedural and Substantive Issues..................................(page 2-3)**

**II. Overview of Factual and Procedural Background......................(page 3-5)**

**III. Summary of Defendants' Motion Issues (Nine Key Issues)................. (page 5-21)**

**IV.  Final Conclusion...................(page 21-22)**

# I .Introduction: Defendants' Motion Is Structurally Disjointed and Intentionally Obscures Procedural and Substantive Issues

## 1.1 Defendants File a Unified Motion Under the Name "Kraken," Violating Both Procedural and Substantive Rules, Rendering the Motion Legally Defective

Defendants failed to distinguish between the identities of the parent and subsidiary companies and submitted a consolidated motion under the non-legal entity name "Kraken." This violates Federal Rule of Civil Procedure 7(b)(1), which requires clarity regarding the identity of the moving party and the specific relief sought. Substantively, the motion obscures the separate legal personalities of the two corporate entities, constituting both a procedural defect and a supporting indicator of veil-piercing. The motion is therefore legally invalid.

## 1.2 Systematic Violations of Rule 26(f) and Rule 34 Disclosure Obligations, Masked by a Dismissal Motion

Defendants have not complied with the initial disclosure obligations outlined in the Disclosure Request (ECF No. 7, Exhibit J), nor have they participated in a Rule 26(f) meet-and-confer process. Instead, they attempt to use a motion to dismiss as a substitute for their mandatory disclosure duties, which constitutes procedural evasion.

## 1.3 Jurisdictional Objections Are Superficial and Fail to Address the Substantive Federal Question Framework

Defendants assert lack of subject matter jurisdiction under Rule 12(b)(1), claiming there is no diversity and no federal question. However, they entirely fail to engage with the three-tiered federal question structure presented in the Complaint: federal common law duties, statutory violations, and substantial federal issues.

## 1.4 Improper Use of Rule 12(f) to Delete Disclosure-Based Facts and Conceal Previously Self-Published Evidence

Defendants seek to strike Exhibit C and related materials (ECF Nos. 4 and 7) under Rule 12(f),

claiming improper disclosure. However, the documents in question were originally published without Plaintiff's consent by Defendants themselves in July 2023 through a public probate court filing. This indicates an attempt to weaponize procedural tools to suppress damaging evidence that they voluntarily disclosed.

1.5 **Defendants Raise Formal Objections to All Claims Without Addressing the Substance of the Allegations or Legal Grounds**

Through their Rule 12(b)(6) motion, Defendants summarily deny all seven causes of action without addressing Plaintiff's detailed allegations, evidentiary chain, or legal foundations. The motion is purely formalistic and evades the substance of the Complaint.

1.6 **Defendants Misrepresent Facts Through Selective Quotation and Mislead the Court, Undermining the Logical Integrity of the Complaint**

In their motion, Defendants selectively quote and decontextualize factual statements from the Complaint, distorting their meaning in order to weaken Plaintiff's claims. This conduct undermines the overall logic and structure of the Complaint, constitutes procedural dishonesty, and crosses into the territory of misleading the Court—thus violating the principles of federal procedural justice.

**Conclusion to Introduction:**

In light of the above, Plaintiff respectfully requests that the Court, after fully understanding **the factual and procedural background** of this case, carefully examine **the nine legal Issues** in Defendants' motion detailed below and deny the motion in its entirety in order to preserve procedural fairness and judicial integrity.

## II. Overview of Factual and Procedural Background

**I**n October 2021, Plaintiff's husband passed away. The court confirmed Plaintiff as his sole lawful heir, thereby entitling her—under applicable law—to inherit all account assets held in his name with Defendant company. One of the Defendants, Payward Ventures (the subsidiary), as the

operating entity responsible for cryptocurrency services for U.S.-based investment clients, is legally obligated—pursuant to both federal and California law—to fully disclose information related to the decedent's accounts.

However, during the estate administration process concerning Plaintiff's late husband, Defendant subsidiary Payward Ventures, acting as the virtual currency trading platform serving U.S. clients, failed to fulfill its mandatory disclosure obligations under the federal regulatory framework. Instead, from the initiation of the estate-related events in 2022 to the present, the legal separation between Defendant's parent and subsidiary entities has been effectively nonexistent. The parent company, Payward, actively coordinated with its subsidiary, Payward Ventures, to systematically obstruct the disclosure and lawful transfer of estate-related information and assets through a series of unlawful practices carried out in ongoing violation of multiple federal regulations (as detailed in this Complaint). These unlawful acts include, but are not limited to: commingling the legal identities of the parent and subsidiary entities, concealing critical account data, submitting fragmented and falsified materials, misleading and intimidating Plaintiff, imposing conditional barriers, and abusing judicial procedures.

The aforementioned conduct by Defendant's parent and subsidiary entities has directly resulted in the continued disappearance of the account assets held in the decedent's name—half of which constitute Plaintiff's community marital property, and the other half her lawful inheritance. Defendants' actions have directly and materially deprived Plaintiff of her legal rights to both her marital and inherited property, causing substantial financial loss and profound emotional harm.

Prior to initiating this lawsuit, Plaintiff made multiple good-faith attempts to explore the possibility of settlement, all of which were disregarded by Defendants. On February 21, 2025, Plaintiff formally filed this action with the Court and, on March 7, 2025, effected service of the Complaint along with Exhibits A through I, including Exhibit J (Disclosure Request), a formal document production demand issued pursuant to Rule 34. Plaintiff also voluntarily granted a 60-day grace period, setting May 6, 2025, as the deadline for Defendants to disclose and respond.

Subsequently, on April 4, 2025, Plaintiff sent a letter to Defendants expressly inquiring about their litigation posture—"litigation or resolution." On April 12, Defendants responded by confirming their choice of "litigation." Plaintiff thereafter issued a Rule 26(f) meet-and-confer letter on April 16, stating that the sole agenda item for the conference was whether Defendants would fulfill the disclosure obligations outlined in Exhibit J by May 6，2025. Plaintiff requested a written "yes" or "no" response by April 22，2025, which also constituted the final deadline under the Rule 34 framework for satisfying Rule 26(f) coordination obligations.

Defendants ignored this coordination effort entirely, providing neither participation nor response. Ultimately, on May 6, 2025, having failed to comply with any of their disclosure obligations, Defendants filed a Rule 12 Motion to Dismiss in an apparent attempt to substitute motion practice for their procedural disclosure responsibilities.

**Conclusion :**

Since 2022, Defendants have continuously infringed upon Plaintiff's inheritance and property rights, causing substantial financial and emotional harm. Despite this, Defendants have refused to settle, disclose, or meaningfully participate in procedural coordination. By misusing procedural sequencing and offering only a Motion to Dismiss as their response, Defendants have abandoned the foundational duties of honest litigation and procedural fairness. In the following sections, Plaintiff will identify and dissect the serious legal Issues embedded in Defendants' motion.

III .<b>Summary of Defendants' Motion Issues (Nine Key Issues)</b>

**Issue 1: The brand name "Kraken" lacks legal personhood—Defendants' motion violates both procedural and substantive requirements and must be deemed invalid.**

Plaintiff's complaint clearly designates two distinct legal entities as Defendants: the subsidiary Payward Ventures and the parent company Payward Inc. However, Defendants submitted a consolidated motion on behalf of both companies under the commercial brand name "Kraken," without identifying the specific legal entity making each request, allocating liability, or specifying the party responsible for disclosure obligations. This use of a fictitious brand name as the legal movant

constitutes a serious procedural violation and structural conflation, rendering the motion fatally vague and legally deficient. It should not be accepted by the Court.

**On the procedural side,** the motion violates Federal Rule of Civil Procedure 7(b)(1), which requires that each motion must be filed by a clearly identified party, with specific relief requested and legal grounds stated. Defendants never distinguish:

> Which legal entity asserts the lack of subject matter jurisdiction under Rule 12(b)(1);
>
> Which entity seeks dismissal under Rule 12(b)(6); or
>
> Which party requests deletion of attachments under Rule 12(f).

This confusion is not a mere technical flaw but a violation of the basic threshold for procedural compliance. As the Sixth Circuit held in *Taylor v. ESG Security, Inc.*, 856 F. App'x 542 (6th Cir. 2021), when multiple entities submit a joint motion without clarifying which arguments apply to which party, the motion should be denied in its entirety.

Similarly, in *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981), the Fifth Circuit emphasized that a court requires each legal entity to appear under its true identity in litigation. The Supreme Court confirmed this in *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993), holding that only legally existing and duly authorized entities may appear as parties in federal litigation.

**On the substantive side,** Defendants completely ignore Plaintiff's core allegation of alter ego liability and veil-piercing, continuing to use the brand name "Kraken" as the sole speaker in their motion. This further conceals the division of responsibility between parent and subsidiary in areas such as asset control, disclosure, customer access, and litigation strategy. Far from clarifying liability boundaries, Defendants' approach reinforces Plaintiff's claim of a single, blended enterprise and supports the veil-piercing doctrine.

As the U.S. Supreme Court has made clear:"Where the parent and the subsidiary blur the lines of operation, control, and liability, such that corporate separateness no longer exists, veil-piercing is warranted."— *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998)

Once veil-piercing is established, the Defendants no longer qualify as two separate legal parties. Rather, the litigation structure itself becomes a legal fiction used to mislead the Court and manipulate procedure—rendering all motions arising from that fiction, including this motion to dismiss,

jurisdictionally defective. The Court is entitled to strike or deny such motions on that basis alone.

**Conclusion:**

The Court has ample grounds to find that Defendants' motion lacks a properly defined movant identity, and that it deliberately evades the legal separation of parent and subsidiary entities. This undermines the legitimacy of their Rule 12 motion and supports Plaintiff's veil-piercing theory. The Court should not permit any party to launch a sweeping dismissal request under a non-entity label to circumvent procedural and disclosure responsibilities. The motion should be denied in its entirety as procedurally and substantively invalid.

**Issue 2: Defendants' procedural violations of Rule 26(f) and Rule 34 disclosure obligations render the motion a textbook abuse of process**

Defendants' present motion not only fails to address the substance of Plaintiff's claims, but also seeks to evade their mandatory disclosure and coordination duties, in direct contravention of the structured sequence imposed by the Federal Rules of Civil Procedure. This constitutes a clear procedural abuse, detailed as follows:

**2.1 The filing of the Complaint triggered disclosure obligations—Exhibit J (ECF No. 7) formally initiated a Rule 34 request.**

Plaintiff's Complaint included Exhibit J (ECF No. 7), a formal disclosure request under Rule 34, requiring Defendants to respond within 30 days of service (by April 6, 2025). In a show of procedural restraint, Plaintiff voluntarily extended the deadline to May 6, 2025, granting Defendants an additional 60-day grace period.

**2.2 Defendants flagrantly violated their Rule 26(f) coordination duty, forcing Plaintiff to submit a unilateral Case Management Statement.**

Plaintiff formally proposed early resolution options, to which Defendants responded by choosing the jury trial path. Plaintiff then sent a Rule 26(f) coordination letter, explicitly stating the proposed agenda for the meeting. Defendants refused to engage or express any position on their disclosure obligations, resulting in a material breach of the Rule 26(f) "meet and confer" requirement. Consequently, Plaintiff filed a unilateral Joint Case Management Statement (ECF No. 14), documenting Defendants' noncompliance.

**2.3 Defendants made no disclosures and used a motion to dismiss as a substitute for required procedures.**

By the May 6, 2025 disclosure deadline, Defendants had submitted neither Rule 26(a)(1) initial disclosures nor a Rule 34 response to Exhibit J. Instead, they launched an ambush-style Rule 12(b)(1), 12(b)(6), and 12(f) motion, effectively attempting to use the motion as a substitute for disclosure. This procedural inversion blatantly violates the Rules' sequencing principle that disclosure precedes dispositive motions. See *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005) ("Courts should not entertain dispositive motions before initial disclosures are completed.").

**2.4 The motion has triggered grounds under Rule 11 for procedural abuse and Rule 37 for compelled disclosure.**

By filing a Rule 12 motion without first fulfilling disclosure and coordination duties, Defendants have not only disrupted the discovery timeline but also potentially violated Rule 11(b)(1)-(3) by acting without a proper purpose or evidentiary basis. Concurrently, Rule 37(a)(3)(B)(iv) authorizes the Court to issue sanctions or compel compliance against a party that refuses disclosure.

**Conclusion:**

Defendants' motion lacks procedural legitimacy and substantive responsiveness, having been filed despite wholesale noncompliance with disclosure obligations and coordination rules. The Court should summarily deny the motion in its entirety and reserve all sanctions and enforcement options under Rule 37.


**Issue 3: Defendants assert that the case lacks diversity jurisdiction under 28 U.S.C. § 1332, but deliberately obscure the fact that the case still lawfully satisfies the standards for federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.**

Defendants move to dismiss for lack of subject-matter jurisdiction, claiming that both parties are California residents and that the complaint raises no federal question, thereby failing to meet the requirements of 28 U.S.C. § 1332. This argument is both legally and factually misleading, as it conflates the distinct concepts of diversity jurisdiction (§1332) and federal question jurisdiction

(§1331).

**E**ven if the case does not qualify for diversity jurisdiction under §1332, Plaintiff's complaint clearly centers on violations of federal financial regulatory obligations. As a virtual asset platform, Defendants are directly subject to federal laws and procedural regulations governing identity verification, transaction disclosure, and estate-related asset control. Plaintiff has explicitly alleged systemic violations of these duties, establishing a "federal question" under §1331. Closely related state-law claims—such as concealment of information and inheritance interference—arise from the same factual nexus and conduct, thereby falling within §1367's supplemental jurisdiction. Accordingly, this Court maintains full and coordinated federal adjudicative authority over the matter. The following three categories support federal question jurisdiction:

**3.1 Federal Common Law Duties:**

The complaint repeatedly and substantively invokes federal common law doctrines, including but not limited to: fraudulent misrepresentation, duty of candor, abuse of process, and tort principles codified in Restatement §§ 222A and 227. These duties have been recognized in precedents such as SEC v. Texas Gulf Sulphur, Hillis v. Heineman, U.S. v. Simon, and Kremen v. Cohen as properly within federal courts' purview.

**3.2 Federal Statutory Framework:**

**P**laintiff's Complaint expressly cites multiple federal statutes as the legal foundation for specific tort-based claims, including but not limited to: Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 (serving as direct grounds for asset concealment and securities fraud allegations); Federal Rule of Civil Procedure 45 (governing Defendants' refusal to comply with subpoenas and disclosure requests); and the Bank Secrecy Act (BSA), Anti-Money Laundering (AML) statutes, and Know-Your-Customer/Customer Identification Program (KYC/CIP) regulatory framework (establishing the federal legal duties underlying Plaintiff's claims of property interference and inheritance obstruction).

**I**n response to these federal citations, Defendants argue that certain statutes "do not provide a private right of action," and thus cannot support federal question jurisdiction. This argument fundamentally misconstrues the governing standard under §1331. Pursuant to the precedents set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* (2005) and

*Gunn v. Minton* (2013), the existence of a federal question does not require a private right of action; it is sufficient that the federal issue is a necessary and substantial component of the dispute. Defendants' reliance on *In re Roundup Products Liability Litigation*, 2017 WL 3129098 (presided over by the same Judge Chhabria), fails to acknowledge the case's limiting context—namely, that federal jurisdiction under §1331 is not triggered where federal law serves only as a peripheral or background element to state-law claims. In *Roundup*, Judge Chhabria held that tangential references to federal law are insufficient to invoke federal jurisdiction; he did not reject jurisdiction in cases where federal statutes lie at the core of the dispute.

In contrast, Plaintiff's allegations regarding BSA/AML/KYC compliance are not peripheral—they lie at the heart of the Complaint and directly determine whether Defendants fulfilled their legal obligations concerning the disclosure and control of financial accounts related to the decedent's estate. This constitutes exactly the kind of "necessary and actually disputed federal issue" contemplated by *Grable*.

In other words, whether Defendants violated the above federal financial regulatory frameworks directly determines the validity of claims such as property interference and inheritance obstruction (as the assets under Plaintiff's late husband's name remain undisclosed due to Defendants' obstruction). This constitutes the type of "necessary and actually disputed federal issue" required under *Grable*. Accordingly, such disputes fall squarely within the substantive jurisdiction of the federal courts under 28 U.S.C. § 1331.

(For the Court's convenience, Plaintiff refers to **Exhibit P (Grable Jurisdiction Table)**, which systematically demonstrates how each cause of action necessarily raises and substantially involves a federal legal issue, properly subject to federal adjudication without disrupting the balance of judicial authority between federal and state courts.)

**3.3 Embedded Federal Issues in State-Law Claims:**

Some state-law causes of action (e.g., property interference, inheritance obstruction) depend on interpreting federal statutes and procedural rules—particularly the BSA, AML/KYC obligations, and Rule 45 subpoena duties. Whether these federal duties were breached is dispositive to these state claims. Per *Grable*, if a state-law claim embeds a "substantial and actually contested federal issue," §1331 jurisdiction is satisfied. Plaintiff's claims fall squarely within this doctrine and also

1  meet the §1367 supplemental standard.

2  **Conclusion:**

3      **T**he three categories of federal question jurisdiction outlined above are presented by Plaintiff as

4      illustrative examples only and do not constitute an exhaustive account of all federal legal

5      grounds and jurisdictional disputes set forth in the Complaint. Plaintiff expressly reserves the

6      right to supplement these grounds as necessary in the course of future proceedings. Nonetheless,

7      even at this stage, the content presented in this section alone is sufficient to establish federal-

8      question jurisdiction under 28 U.S.C. § 1331, as well as supplemental jurisdiction under 28

9      U.S.C. § 1367.

10     **P**laintiff therefore respectfully requests that the Court deny Defendants' Rule 12(b)(1) motion

11     challenging subject-matter jurisdiction.

12

13  **Issue 4: Defendants Themselves Disclosed the Alleged "Confidential Material" but Now Claim**

14  **"Malicious Disclosure," Amounting to Procedural Self-Sabotage and Violations of Due Process**

15  **and Confidentiality Waiver Principles — Plaintiff Respectfully Requests the Court to Deny the**

16  **Motion to Strike**

17     **D**efendants have yet to substantively respond to the disclosure topics required by the Rule 26(f)

18  conference and have failed to submit any form of initial disclosures, in clear violation of their

19  foundational procedural duties at the onset of this litigation. Against this background, Defendants

20  now invoke Rule 12(f) to request the Court to strike documents that Plaintiff properly submitted in

21  accordance with the Rules and attached to the Complaint, thereby attempting to bypass their own

22  disclosure obligations while claiming the right to censor Plaintiff's disclosures. This position is not

23  only procedurally contradictory but constitutes a selective abuse of the Federal Rules and a breach of

24  procedural candor. The Court should not permit a party that is in complete breach of its disclosure

25  duties to claim discretionary control over disclosure content.

26     **P**laintiff further notes that Defendants seek to strike Exhibits filed under ECF Nos. 4 and 7,

27  alleging these contain "confidential information" and constitute "malicious disclosure." In truth, the

28  materials at issue were initially and voluntarily filed by Defendant Payward Ventures in July 2023 in

a California probate court, where they became part of the public judicial archive. Plaintiff merely cited publicly available court records without alteration or embellishment.

Defendants now attempt to recharacterize their own incomplete and voluntarily disclosed information as "sensitive," and to accuse Plaintiff of "malicious conduct," an act that violates the principle of litigation integrity and constitutes procedural self-sabotage. This tactic contravenes the following legal principles:

**4.1 Judicial Transparency Doctrine:** "Once information is publicly filed in court records, it is no longer considered confidential or sealable." — *In re Elec. Arts*, 298 F. App'x 568, 569 (9th Cir. 2008). Once filed, court records lose their confidential character. A party cannot simultaneously disclose material publicly and assert confidentiality.

**4.2 Waiver of Confidentiality:** "Where a party itself voluntarily discloses information in a public filing, it waives any claim of confidentiality." — *Music Grp. Macao v. Foote*, 2015 WL 3993147, at *6 (N.D. Cal. 2015). Information voluntarily made public is no longer protected. Plaintiff cited only what Defendants themselves chose to disclose.

**4.3 Violation of Rule 11(b)(3)'s Duty of Candor:** Defendants concealed the fact that they were the first to disclose the materials and then accused Plaintiff of "malicious disclosure." This constitutes a material misrepresentation to the Court, violating Rule 11(b)(3)'s requirement for factual accuracy.

**4.4 Procedural Fairness and Evidentiary Parity:** Plaintiff has a rightful interest in citing public records in litigation. Defendants' attempt to strike such evidence effectively deprives one party of evidentiary access and procedural parity.

**Conclusion:**

The evidence cited by Plaintiff was originally disclosed by Defendants themselves in probate court and has since become part of the judicial record. The material is objective, contains no defamatory content, and does not constitute "malicious disclosure" nor warrant sealing. On the contrary, it was Defendants who, without authorization, first disclosed fragmented information concerning Plaintiff's family assets, thereby seriously infringing upon Plaintiff's financial privacy. Now

invoking Rule 12(f) to delete such disclosures constitutes a form of reverse procedural manipulation that clearly violates the principles of litigation integrity and procedural fairness. The motion should be denied in its entirety, and the Court is respectfully urged to remind Defendants that the legal consequences of their prior voluntary disclosures cannot be avoided.

**Issue 5: Defendants asserted "platform risk" without first reporting to the SEC, yet sought to suppress unfavorable evidence under the guise of "confidentiality"—a clear violation of the doctrine of judicial estoppel.**

Pursuant to Section 13(a) and Section 10(b) of the Securities Exchange Act, as well as SEC regulations including Regulation S-K and Form 8-K disclosure requirements, Defendants—being a pre-IPO financial technology company—are obligated to file timely disclosure statements with the SEC if they identify platform conditions that may result in "loss of customer funds" or "systemic operational risk." Failure to make such timely disclosures constitutes a material omission and fraudulent silence, exposing the company to securities fraud litigation and regulatory enforcement risk.

As established by the Ninth Circuit: *"A company's failure to disclose known systemic risks— particularly those that could materially affect investor decisions or enterprise valuation—constitutes a violation of securities law obligations."— In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021).

However,Defendants neither disclosed the alleged risk information to regulators via Form 8-K nor sought a court order to seal or restrict access. Instead, they voluntarily submitted their so-called "high-risk information" into the public record of the California probate proceeding. Subsequently, in the present federal litigation, Defendants reversed course and asserted that the same information implicated "platform security," using this claim to request the removal of the evidence.

**Conclusion:**

Defendants' inconsistent legal positions—centered on the same core factual dispute—have a direct and substantial impact on the outcome of this case, thereby constituting a violation of the doctrine of **judicial estoppel**. This litigation tactic further reveals that Defendants' purported "security

concerns" were not grounded in genuine risk mitigation, but rather served as a procedural strategy to suppress unfavorable evidence.

**Issue 6: Plaintiff Has Standing Under Article III of the U.S. Constitution; Defendants Misrepresent the Complaint, Rely on Misquotation, and Fabricate Facts**

**D**efendants contend that Plaintiff lacks Article III standing, arguing that "Kraken allegedly provided account access," that the platform lacks authority over off-chain assets, and that Plaintiff's emotional harm is merely speculative. However, this assertion disregards the actual factual framework of the Complaint and misapplies the legal standard for constitutional standing. Plaintiff's standing is fully established under the three-part test set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

**6.1 The Three-Part Standard for Constitutional Standing**

**6.1.1 Injury in Fact — Concrete and Ongoing Harm**

**D**efendants have continually refused to disclose complete account information, leaving Plaintiff unable to confirm the scope of her late husband's estate or to assert her legal rights to inheritance and marital property, resulting in ongoing harm. As of the date of this filing, Plaintiff remains unaware of the total amount her husband invested on Defendants' platform, the profits accrued, the account identifiers, transactional records, balances, or asset flows.

**W**hile third-party bank records confirm that her husband transferred approximately $284,150 in investment capital to Defendant Payward between April 2019 and August 2020—when Bitcoin traded between $3,000 and $5,000 per coin—Defendants have refused to disclose any corresponding asset records following his death in October 2021. Bitcoin has since risen to a value exceeding $100,000 per coin.

**H**alf of the assets in question constitute Plaintiff's marital property; the other half represents her legal inheritance. Defendants' ongoing concealment has caused a dual deprivation of Plaintiff's property and inheritance rights, resulting in severe financial harm and sustained emotional distress.

**6.1.2 Causation — Direct Legal Causal Chain**

**T**here is a direct legal causation between Plaintiff's injury and Defendants' refusal to fully disclose. Plaintiff's late husband's accounts were under Defendants' control. Even after Plaintiff

was court-certified as the sole legal heir, Defendants failed to provide full and verifiable account information. This concealment directly prevented Plaintiff from asserting her legal and economic rights.

### 6.1.3 Redressability — Judicial Relief Available

Should the Court compel full asset disclosure, Plaintiff would be able to calculate losses, assert her inheritance rights, and seek compensatory, punitive, and emotional damages. As affirmed in *FEC v. Akins*, 524 U.S. 11, 21 (1998):*"A denial of information that a plaintiff is entitled to by law itself constitutes a concrete injury."*Here, the obstruction of access to financial information constitutes a procedural injury with substantive legal consequences.

## 6.2 Defendants' "Access Granted" Defense Is Procedurally Fabricated and Factually Misleading

Defendants' assertion that they "granted access" to the account grossly misrepresents the factual structure of the Complaint. As detailed in pages 22–25 and in Exhibits F and G (ECF No. 7), Plaintiff has never been granted any valid or effective access. Defendants selectively quote out-of-context language and falsely present it as Plaintiff's admission of access. This defense lacks both factual basis and procedural legitimacy, violating Rule 11(b)(3) (factual support) and approaching Rule 11(b)(1)'s threshold of improper purpose and misrepresentation to the Court.

## 6.3 Emotional Distress Is Legally Cognizable, Not Speculative

Plaintiff's claim for emotional distress is not an independent cause of action but stems from Defendants' misconduct—specifically, financial obstruction, information suppression, procedural stalling, and threats. These injuries have clear causation and are judicially redressable.

*"When a plaintiff suffers emotional distress as a direct result of systemic procedural obstruction, such distress is neither speculative nor conjectural."*— *Doe v. Chao*, 540 U.S. 614, 617 (2004)

## Conclusion:

Defendants' standing challenge is premised on factual fabrications, including the false claims that access was granted, assets were disclosed, and harm has ceased. These assertions violate the duty of candor and are transparently aimed at evading core disclosure obligations. Plaintiff's current harm—including continued data suppression, asset disappearance, and blocked inheritance rights—fully satisfies the requirements of injury in fact, causation, and redressability under Article

III. Accordingly, Plaintiff has full and proper standing, and Defendants' motion must be denied.

**Issue 7: Plaintiff's Complaint Far Exceeds the Requirements of Rule 12(b)(6); Defendants' Invocation of Twombly/Iqbal Is a Misleading Attempt to Dismiss Meritorious Claims**

Defendants allege that Plaintiff has failed to plead sufficient facts to support her legal claims. This assertion is factually inaccurate and ignores the basic standards established by federal courts for evaluating motions under Rule 12(b)(6). Plaintiff's Complaint not only sets forth detailed factual backgrounds, legal grounds, evidentiary support, and damages for each cause of action, but also approaches the level of clarity typically expected at the trial stage—well beyond the minimum threshold required by the Federal Rules.

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Likewise, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) confirms that courts must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." In this case, Plaintiff's Complaint details each claim with specific acts, timeframes, sources of evidence, and legal theories—far exceeding the threshold of "speculation" and satisfying Twombly's requirement of a "reasonable possibility of entitlement to relief" (550 U.S. at 555).

Referencing the court's reasoning in *UCP Int'l Co. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 984 (N.D. Cal. 2019), none of Plaintiff's claims can be dismissed at the pleading stage based on procedural exemptions or legal exclusions. Each count is supported by well-pleaded facts and legally cognizable grounds, constituting complete and actionable claims.

**Conclusion:**

Accordingly, Defendants' assertion that Plaintiff has "failed to state a claim" is incorrect and reflects a selective misreading of the Complaint's substance and structure. Plaintiff respectfully requests that the Court deny Defendants' Rule 12(b)(6) motion in its entirety.

**Issue 8: Defendants Improperly Invoke the "Litigation Privilege" to Shield Substantive Misconduct, Amounting to a Misapplication of Law and Structural Misrepresentation**

Defendants argue that Plaintiff's claims are barred as a matter of law, citing *Twombly/Iqbal* for

insufficient factual support while simultaneously invoking the California litigation privilege to cloak their actions in procedural legitimacy. This combined strategy violates principles of federal procedural fairness and misuses state-law immunity to obscure ongoing substantive misconduct. It reflects a structural distortion of legal applicability.

### 8.1 Plaintiff's Complaint Meets the Level of Specificity Required for Legal Relief

**A**s explained in Issue 7, Plaintiff has provided detailed factual allegations, legal bases, evidence references, and damages for each claim, exceeding *Twombly/Iqbal*'s threshold. Defendants' assertion of "insufficient pleading" is merely a conclusory denial, not a substantive rebuttal. They fail to identify any missing legal elements and do not address the dozens of specific facts and exhibits cited in support (see ECF No. 7). This mischaracterization constitutes a misleading application of Rule 12(b)(6).

### 8.2 Defendants Attempt to Recast Their Misconduct in Probate Proceedings as Privileged "Litigation Communication"

**D**efendants attempt to shield their acts of concealment, misrepresentation, disclosure violations, and procedural abuse—committed in the context of inheritance administration—by invoking the litigation privilege. This argument grossly exceeds the scope of California's litigation privilege. As the California Supreme Court held in *Flatley v. Mauro*, 39 Cal.4th 299, 317 (2006), the privilege does not extend to illegal or abusive litigation conduct. Even under §47(b), the protection applies only to legitimate communications logically connected to lawful litigation, not to systemic concealment, document fabrication, or obstruction of financial disclosures.

**A**s a virtual asset trading platform subject to federal regulation in account verification, transaction transparency, and inheritance-related access, Defendants are independently accountable under federal law. See *United States v. Katuramu*, 2021 WL 1062758. Their attempt to use state-law privilege to negate federal duties misrepresents jurisdictional boundaries and challenges federal adjudicative authority. The chain of tortious conduct alleged by Plaintiff is based on independent violations of federal financial obligations, not traditional litigation communications, and clearly falls outside the scope of the privilege.

### 8.3 Defendants Misapply the "Pre-Litigation Communication" Exception to Excuse Their Silence and Obstruction

**D**efendants claim that their conduct qualifies as "pre-litigation communication" and is therefore protected. This assertion is unsupported by the record. Plaintiff made multiple good-faith efforts to initiate dialogue and pursue resolution, all of which were ignored. Defendants never engaged in substantive exchanges. Their refusal to respond and deliberate suppression of information cannot be reframed as protected "communication." As the California Supreme Court explained in *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011), litigation privilege applies only to actual, interactive communications—not to silence, evasion, or refusal to disclose—none of which form a valid basis for immunity.

**Conclusion:**

**D**efendants, fully aware of their federal disclosure obligations, now attempt to repackage their systemic concealment and interference as "procedural communications" in order to invoke the litigation privilege. This constitutes an abuse of the privilege and a denial of Plaintiff's right to pursue relief through proper legal channels. Plaintiff's claims—grounded in federal disclosure duties, inheritance access rights, and procedural fairness—fall squarely within the scope of federal question jurisdiction under 28 U.S.C. § 1331 (*Grable*, 545 U.S. at 313–14). Defendants' privilege-based defense must be rejected. Plaintiff respectfully requests that the Court deny Defendants' litigation privilege defense in its entirety.

**Issue 9: Defendants attempt to use formalistic standards and procedural exemptions to systematically negate Plaintiff's seven substantive claims—constituting a case of "substantive evasion under the guise of procedural packaging."**

**D**efendants argue that the Complaint fails to meet the requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b), attempting to dismantle Plaintiff's claims by slicing them apart through formalistic standards. In reality, however, the Complaint not only satisfies the pleading requirements established under *Twombly* and *Iqbal*, but also approaches trial-level specificity in the gravity of the alleged facts, the clarity of the claim structure, and the concreteness of the supporting evidence.

**A**t its core, this case reveals that during the estate succession process, Defendants engaged in a sustained course of conduct that violated federal law—including the fabrication of account

information, deliberate concealment of critical data, systemic deception and fraudulent nondisclosure, intimidation tactics, and abuse of legal procedures. These actions inflicted substantial harm on Plaintiff, both financially and emotionally. Instead of substantively responding to these core allegations, Defendants now seek to obscure their structural and substantive misconduct behind claims of "pleading defects" and "procedural exemptions," constituting a clear instance of procedural bad faith. What follows is a point-by-point rebuttal of Defendants' misrepresentations and distortions :

a. **Plaintiff's Claims for Fraudulent Concealment and Fraudulent Misrepresentation Satisfy Rule 9(b)**

**P**laintiff's claims for fraudulent concealment and misrepresentation meet the heightened pleading standard under Rule 9(b), providing detailed identification of the responsible parties, timeline of conduct, methods used, and supporting documentary evidence. The complaint and attached exhibits (e.g., ECF No. 7) outline how Defendants employed data suppression, document tampering, conditional obstruction, and threats to systematically obstruct Plaintiff's exercise of inheritance rights. Under *Vess v. Ciba-Geigy Corp.* and *Swartz v. KPMG LLP*, Plaintiff's narrative establishes a complete and particularized chain of fraudulent acts. Defendants' attempt to dismiss these claims under Rule 9(b) is entirely without merit.

**b. Plaintiff's Claim for Malicious Interference with Inheritance is Well-Pled; Defendants' Citation to Beckwith v. Dahl Supports Plaintiff's Theory**

**D**efendants cite *Beckwith v. Dahl*, 205 Cal.App.4th 1039 (2012), to analogize this case—but doing so reveals a fatal contradiction in their own defense. First, the *Beckwith* decision involved a non-marital partner lacking legal inheritance status, while Plaintiff here is the lawful spouse of the decedent, with direct claims to both community property and first-priority inheritance rights—far stronger than the plaintiff in *Beckwith*.

**S**econd, the *Beckwith* ruling was based on the premise that the defendant had knowledge of the decedent's testamentary intent and estate and nonetheless intentionally obstructed its execution. Applying *Beckwith* to the present case therefore implies that Defendants knew of the existence and

nature of the decedent's assets but still chose to block disclosure and evade procedural obligations—thus affirming Plaintiff's allegations of scienter, obstruction, and willful concealment. Far from exculpating Defendants, their reliance on *Beckwith* directly reinforces the core factual foundation of Plaintiff's claims

### c . Plaintiff's Claim for Property Tort Is Legally Sufficient; Defendants' Conduct Includes Constructive Possession and Inheritance Obstruction, Not Limited to Physical Control

**D**efendants' argument that Plaintiff cannot assert a property tort due to lack of immediate physical possession constitutes a misleading narrowing of the legal definition of property interference. As affirmed by Restatement (Second) of Torts §§ 222A and 227, as well as *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), wrongful control over property is not limited to physical possession. It also includes acts such as concealment of information, delayed disclosure, record manipulation, and the deliberate confusion of legal entities—each of which substantively obstructs the rightful owner's ability to manage and assert their property rights.

**B**oth California and federal law recognize that "functional control" is sufficient to establish tort liability. In this case, Plaintiff has been unable to ascertain the whereabouts of her late husband's assets due to Defendants' continued refusal to disclose, which constitutes ongoing tortious interference. This claim meets all elements of a valid tort and should proceed to merits adjudication.

### d. Rebutting Defendants' Erroneous Argument Regarding "No Private Right of Action" Under the BSA

**D**efendants' assertion that the Bank Secrecy Act (BSA) does not provide for a private right of action is a red herring. Plaintiff is not suing under the BSA as an independent cause of action, but rather referencing its AML/KYC requirements as federal standards for minimum industry compliance. These standards support Plaintiff's claims    under Restatement § 551.

**E**ven the case cited by Defendants—*Venture Gen. Agency, LLC*—acknowledges that while the BSA lacks private enforcement provisions, the duties it imposes can serve as the basis for common-law tort or consumer protection claims. Courts have consistently affirmed that BSA obligations can serve as objective standards of conduct in civil claims—see *Wachovia Bank*, *Capital Gains Research*

*Bureau*, and the *BitMEX AML* decision.

Plaintiff is not "enforcing the BSA" as a regulator but invoking established federal norms to demonstrate Defendants' breach of legal duties. Defendants' reliance on the lack of a private right of action is a formalistic argument that does not shield them from civil liability for concealment and misconduct.

**e. Violation of Financial Disclosure Obligations Constitutes Substantive Tort, Not Procedural Privilege**

Defendants attempt to trivialize Plaintiff's financial disclosure claims as mere disputes over procedural rules (e.g., Rule 45 or Cal. Civ. Proc. § 2020.220) and claim such conduct is protected by litigation privilege. This is misleading. Plaintiff's sixth cause of action (pp. 102–122 of the complaint) sets forth detailed allegations that Defendants, despite knowing Plaintiff's legal status as heir and spouse, maliciously withheld, altered, concealed, and delayed required financial disclosures. These acts violated federal and state laws, including the BSA, Sarbanes-Oxley Act, federal securities regulations, the Consumer Legal Remedies Act (CLRA), and Restatement § 551.

Defendants manipulated asset records, submitted fabricated Excel files, concealed transaction data, and obscured legal identities—all while using legal threats to pressure Plaintiff into waiving her rights. These actions are not shielded by procedural privilege. Precedents such as *Barquis*, *Arthur Andersen*, and *Bank of Nova Scotia* confirm that such systemic interference with property and inheritance rights constitutes actionable torts.

Here, Defendants' financial concealment and delay amount to ongoing, calculated oppression—squarely within the realm of substantive torts. This issue must be adjudicated on the merits and submitted to a jury to determine the fraudulent and abusive nature of Defendants' conduct.

**f. Abuse of Legal Process Constitutes an Independent and Actionable Tort**

The complaint further alleges that Defendants, rather than complying with inheritance-related disclosure duties, used procedural weapons to sabotage Plaintiff's legitimate claims. This includes threats of counterclaims, falsely labeling Plaintiff a "vexatious litigant," misusing arbitration clauses to avoid federal review, manipulating the discovery timeline, submitting reconstructed

false documents, and imposing conditional barriers—all with the intent to pressure Plaintiff to abandon her claims.

Such conduct meets all elements of the tort of abuse of process and is independently actionable under both state and federal law.

### IV. Final Conclusion

The substantive dispute in this case cannot be reduced to procedural technicalities. Rather, it presents a core legal examination of whether Defendants, as a financial trading platform operating under federal regulatory frameworks, have fulfilled their obligations to disclose financial information, obstructed the lawful exercise of inheritance rights, and abused procedural mechanisms to conceal tortious conduct.

Plaintiff's complaint not only fully satisfies the pleading standards set forth in *Twombly/Iqbal* and Rule 9(b), but also constructs a well-organized, evidence-supported, and legally grounded chain of actionable tort claims. In contrast, Defendants' motion deliberately evades core liabilities, conflates procedural and substantive frameworks, misapplies governing legal structures, and fails to substantively address key facts or legal duties. Instead, it weaponizes procedural rules in an attempt to obscure ongoing systemic misconduct.

Plaintiff respectfully requests that the Court:

**4.1 Deny in full Defendants' motion to dismiss brought under Rules 12(b)(1), 12(b)(6), and 12(f);**

**4.2 Affirmatively recognize this case as presenting a federal question under 28 U.S.C. § 1331 and confirm the Court's supplemental jurisdiction under 28 U.S.C. § 1367;**

**4.3 Reserve Plaintiff's right to seek further relief under Rules 11 and 37, as appropriate.**

Only by denying such motions can this Court preserve the integrity of federal procedure, safeguard fundamental rights, and deter abusive litigation tactics.

**Date:** 05/19/2025          **Signature:**

**Name :**    Lianlian Porth

**Atty.:** Pro Se